UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LORI ANN CLAAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 1:24-CV-361-PPS |
| ) | |
| LELAND DUDEK, ) | |
| Acting Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Lori Claar appeals the Social Security Administration's decision to deny her application for disability insurance benefits and supplemental security income. During the hearing before the ALJ, Claar largely complained about her depression and anxiety, feeling overwhelmed, and memory fog. Ultimately, the ALJ found Claar had the severe impairments of: major depressive disorder, recurrent, moderate and panic disorder. [Tr. 30.][1] The ALJ also determined that Claar was not disabled, and she had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can carry out detailed but not complex instructions and she is limited to frequent interaction with coworkers, supervisors, and the general public. [Tr. 32.] Because I find that the ALJ properly

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination stamped at the bottom right of each page of the record (found at DE 7).

analyzed Claar's RFC and made a proper determination at Step Five, I will affirm the ALJ's decision.

## Discussion

I'll start, as usual, with the standards that govern my decision-making in this appeal. My job is not to determine from scratch whether or not Claar is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). But, of course, I can't "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Claar sets forth three main arguments in support of remand: (1) the ALJ failed to explain how the RFC for work at all exertional levels accommodates Claar's limitations given her alleged obesity, tenderness, and joint pain; (2) the RFC is legally erroneous and not supported by substantial evidence because the ALJ failed to address or

improperly rejected evidence showing Claar has greater mental limitations; and (3) the ALJ's subjective symptom analysis was patently wrong because the ALJ relied on the purported absence of objective findings and improper conclusions to find Claar less limited than alleged. Each argument will be addressed in the order it was presented.

## I. Whether the ALJ Failed to Explain How the RFC Accommodates Plaintiff's Limitations

Claar claims the ALJ failed to explain how the RFC for work at all exertion levels accommodates her limitations given her obesity, tenderness, and joint pain. [DE 11 at 7.] In particular, Claar insists "[t]he ALJ's silence as to Plaintiff's obesity is reversible." [DE 11 at 10.] The Commissioner counters with the argument that the record does not indicate Claar *had* significant weight and pain issues. [DE 16 at 4-5.] And this is the main problem with Claar's obesity argument - the medical record is very bare on this issue. Claar did not allege obesity when applying for disability benefits. [Tr. 256.] Aside from a brief discussion with the ALJ during the hearing about what Claar weighed and that she gained about 60-70 pounds since taking medication over a period of 25 years [Tr. 53], Claar never mentioned her weight or claimed it limited her in any way. She complained of feeling overwhelmed, memory loss, brain fog, lack of focus and a small attention span, feeling paranoid, sleep apnea, and hypertension. [Tr. 63-64, 73.] When the ALJ specifically asked her if she needed to take frequent breaks, and whether she had complications with her current or past work, Claar answered, "I mean my anxiety gets, and depression can cause body aches and I have body aches because of my depression my body goes all the time." [Tr. 68-69.] Therefore, it seems appropriate

that the ALJ discussed Claar's height and weight in the opinion (which was 5'7", 185 pounds at the time), but then did not go on to analyze any further how Claar's weight might limit her ability to do a full range of work.

To be fair, there is documented evidence of Claar's weight over time in the medical record (which the ALJ acknowledged), but no doctor actually diagnosed her with obesity. Claar hovered around the obesity mark, at least as that term is defined by the Regulations. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). If anything, Claar's weight could be characterized in the bottom of Level I which includes BMIs of 30.0-34.9. *Id.* Plaintiff cites office notes from Dr. Keith Derickson on March 26, 2021, which state Claar had a BMI of 33-33.9. [DE 11 at 10; DE 19 at 7; Tr. 355.] However, Dr. Derickson does not diagnose her with"obesity" in his clinic notes. Rather, Claar's BMI of 33.0-33.9 is listed under the category of "problem list/past medical history" and under the heading "physical exam" her abdomen is described by the doctor as "obese, soft, nontender, no HSM or masses appreciated." [Tr. 355.] Other doctor notes reflect various weights, including a BMI of 29.6 in January 2022 [Tr. 361], weight of 194 pounds which would be a BMI of 31.5 in the July 2022 consultative medical examiner's report [Tr. 400], and the weight and height she stated at her disability hearing calculated to a BMI of 29 [Tr. 33].

But it is important to remember that a certain BMI number doesn't necessarily equate to having a severe impairment. As the Regulations require, "[w]e will find that obesity is a 'severe' impairment when, alone or in combination with another medically

4

determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 2002 WL 34686281, at *4.  "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record." *Id.* at *6.

There is a lack of information in the record showing Claar's weight limited her at all.  And indeed, during her testimony at the hearing, Claar didn't say anything about her weight when describing what was preventing her from working. [Tr. 55-71.] At the time of the hearing, Claar had been working at Red Lobster for a month as a server [Tr. 54-55].  Before that, she worked at KinderCare [Tr. 55].  When asked why she stopped working at KinderCare, she said "[i]t was just too mentally challenging for me.  It was a very difficult demanding job and I just couldn't do it anymore." *Id.*  Prior to that, Claar worked at Chop's Steak and Seafood as a server and she said she stopped working there because she "had a breakdown and [she] couldn't deal with the shift and how busy they were." [*Id.* at 56.]

There were other jobs, too.  In 2018, 2019, and 2020 Claar worked as a server at FHW Venture restaurant and was on her feet and lifted some heavy trays around 20-25 pounds. [*Id.* at 57.]  She also worked at an auto parts store as a cashier where she was required to stand, and she worked at a mail store for about 5 months where she

5

sometimes lifted "50 pounds, 30 pounds maybe." [*Id.* at 58-60.] These were all physically demanding jobs that would have required Claar to be on her feet, yet she never said *anything* about her weight restricting her in any way from fulfilling her duties.

 I am of course cognizant of the Seventh Circuit line of cases that holds a positive work history in general can make a claimant more credible and a desire to work is not necessarily inconsistent with disability. *See Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). But the point here is that Claar is now claiming her obesity, in combination with her other impairments, prevents her from gainful employment. But her own testimony establishes that the reason she quit most of her past jobs is because they were too mentally challenging for her. She does not claim they were too physically taxing, or that her obesity prevented her from doing any of these rather strenuous jobs. So Claar's past work history is a helpful fact to consider when trying to determine the functional effect of her weight.

 Without any evidence to support the claim that her obesity limited her ability to work, Claar's bald claim that the ALJ did not sufficiently analyze her weight goes nowhere. The Seventh Circuit dealt with a similar claim in *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006), where the claimant argued the ALJ ignored the effect of her documented obesity, which in tandem with her diagnosed back impairment, created a disability. Just like in this case, the Seventh Circuit found in *Prochaska* that even though the ALJ did not address her obesity, "[n]o medical opinion in the record identified

6

[claimant's] obesity as significantly aggravating her back injury or contributing to her physical limitations." *Id.* at 737.  Additionally, she also failed "to point to any other evidence suggesting that her obesity exacerbated her physical impairments."  Therefore, the Seventh Circuit found if there was any error on the part of the ALJ, it was harmless. *Id.*  The same goes for Claar:  there is nothing in the record—no medical opinions or even her own testimony—suggesting that her obesity limited her ability to work in any way.  Therefore, even if the ALJ should have considered her obesity more (and that is a tough tack to take since there was really no additional evidence in the record about her obesity), any such error would be harmless.

Claar claims that "Plaintiff suffers from obesity which exacerbates her other physical limitations, including her chronic joint pain and depression" [DE 11 at 11], citing pages 423-425 of the medical transcript.  However, those pages are an initial assessment and diagnostic impression by Dr. Meredith Minchski, and she only notes under "client's initial explanation of the problem(s), duration, and precipitant cause" that Claar has had a "change in weight (gain - 60 pounds in last 18 months)." [Tr. 423.] Nothing about this medical notation provides any evidence that Claar's weight was a limitation effecting her capacity to work; it is instead just a passing reference to her weight.

Claar also argues that the ALJ's RFC is unsupported and she did not sufficiently explain the RFC finding. [DE 11 at 13-22.]  I disagree.  I think the ALJ did summarize the evidence and engaged in a balanced review to arrive at the RFC.  While Claar accuses

7

the ALJ of failing "to consider significant evidence favorable to Plaintiff" [DE 19 at 5], a review of the ALJ's decision shows that the ALJ considered both favorable and non-favorable evidence, even highlighting certain evidence that contradicted her findings.

The relevant period in this case is from February 2022 to August 2023. During the earlier part of this time, the ALJ noted that Claar consistently reported feeling depressed, dark, exhausted, anxious, sad, unmotivated, discouraged, and she had some panic attacks. [Tr. 34.] However, even then, her mental status exam findings were mostly still normal. [Tr. 34 (citing Tr. 469, 473, 476.] The ALJ noted that Claar's psychiatric exam at a medication check in July 2022 showed a pleasant affect with appropriate judgment and insight. [Tr. 34 (citing Tr. 414).] However, her counseling notes in the same month showed Claar's mood was severely depressed, although her insight and judgment remained fair. [Tr. 35 (citing Tr. 488).] At the consultative medical exam in those same months, Claar reported her medication helped to control her mental health issues somewhat, but she still had good and bad days. [Tr. 35, 399.] In October 2022, she reported there had been an increase in her depression and panic symptoms, and she was noted to be sad and anxious. [Tr. 35 (citing Tr. 499).] Accordingly, Claar's medication was adjusted. [*Id.* at 499-500.] In January 2023, she reported she was anxious and sad, so they changed her medication, and she indicated she was not feeling too bad. [Tr. 35-36.] Later that month Claar reported a "substantial improvement" in her mood and her mental status exam was normal. [Tr. 36 (citing Tr. 530).] In March 2023, Claar reported doing well since her last visit and her mood remained stable. *Id.*

8

She was happy with her progress, but still described significant fatigue. *Id.* The following month she indicated she didn't want to adjust her medication, and the treatment records indicate her life situation was "[a]ll well," her medication compliance was "good," and her psychotherapy was "working out well." [Tr. 534.]

The record also contained prior findings from two state-agency physicians regarding Claar's physical impairments. [Tr. 36.] Dr. Whitley and Dr. Small both found Claar did not have a severe physical medical impairment, and because the ALJ found the determination "is consistent with and supported by the claimant's collective treatment records, which are devoid of a pattern of subjective complaints or abnormal objective examination findings that would suggest her physical impairments presented as more than minimally limiting for a period of twelve months after the alleged onset date," the ALJ found the findings persuasive. *Id.*

In contrast, two state agency psychological consultants, Dr. Hill and Dr. Neville, found Claar did not have any severe mental health impairments, but the ALJ disagreed, citing mental status exam findings and treatment notes that support Claar's mental health impairments are more than minimally limiting; rather, they are severe. [Tr. 36.]

Ultimately, the ALJ found:

> Based on the claimant's major depressive disorder, recurrent, moderate and panic disorder, the undersigned finds it is reasonable to carry[] out detailed but not complex instructions. She is limited to frequent interaction with coworkers, supervisors, and the general public. Her activities of daily living, while not dispositive she can work, are not consistent with the limitations she alleged. She is able to drive, prepare simple meals, handle money, shop in stores, spend time with her kids, care for her pets, drive, and work

9

> part time.  (Ex. 5E, Hearing Testimony).  Moreover, her limited and conservative treatment does not support greater limitations.
>
>    \*      \*      \*
>
> Based on the foregoing, the undersigned finds the claimant does have mental impairments that have affected her ability to perform non-exertional activities.  However, after careful consideration of the entire longitudinal record, the claimant's alleged inability to work was not supported by the objective record.  The claimant's treatment as a whole, as discussed above, did not demonstrate limitations inconsistent with the residual functional capacity.  Moreover, the claimant's limited and conservative treatment for her alleged impairments is probative of the lack of severity of her condition.  Therefore, the undersigned finds the claimant can perform within the residual functional capacity, as modified, above.

[Tr. 36-37.]  As is evident from the opinion itself, the ALJ amply supported the RFC with substantial evidence, providing far "more than a mere scintilla" of evidence this court requires to affirm the ALJ's decision.  *Biestek v. Berryhill*, 587 U.S. 97, 10 (2019).

Peppered into Claar's briefs is the catchphrase that the ALJ did not create a "logical bridge" between the evidence and her conclusions. [DE 11 at 8-9, 13; DE 19 at 2, 3, 4, 5, 9, 14.]  That is somewhat of a tired phrase.  Indeed, as the Seventh Circuit has recently ruled, the "logical bridge" language is "shorthand" for requiring only that ALJs "provide an explanation for how the evidence leads to their conclusions," that is sufficient to allow the reviewing court "to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review."  *Warnell v. O'Malley*, 97 F.4th at 1050, 1054 (7th Cir. 2024).  In this case, the ALJ's decision contains more than sufficient information, analysis, and explanation to allow meaningful judicial review.  *See Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) ("[T]he 'logical bridge'

10

language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard."); *King v. Berryhill*, No. 17 C 8712, 2018 WL 6179092, at *2-*3 (N.D. Ill. Nov. 27, 2018) ("as occurs so often where catch phrases are involved, the phrase 'logical bridge' has for some taken on a life of its own as though it were some self-defining and exacting test" but it really only means "[t]he reviewing court must be able to trace the path of the ALJ's reasoning from the evidence to the conclusion."). In this case , the ALJ has included enough specific details that I am able to follow her reasoning between the evidence and the result.

Claar insists that the Commissioner's reliance on *Warnell* is somehow misplaced. [DE 19 at 2.] I fail to see how. The Seventh Circuit very directly explained the scope of review in *Warnell* and, in my opinion, it is indeed controlling for this case:

> The better course is to stick to our precedent, which is all about substance and not form. Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning. All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.

97 F.4th at 1053 (citations and quotations omitted). Similar to *Warnell*, in this case the ALJ provided a more than sufficient explanation for why she reached the RFC in this case. Also like *Warnell*, the ALJ "acknowledged and grappled with conflicting evidence, ultimately concluding that the treatment record as a whole supports a finding of non-

11

disability." *Id.* at 1054. This is entirely appropriate and "[t]he law required no more of the ALJ." *Id.* The ALJ did not only recite evidence in this case, she also explained her thought process of evidence review to reaching her findings and conclusions. This is more than sufficient.

## II. Whether the ALJ Failed to Address or Improperly Reject Evidence Showing Claar Has Greater Mental Limitations

Claar next argues the RFC is legally erroneous and not supported by substantial evidence because the ALJ did not sufficiently explain how she could perform detailed but not complex instructions and handle frequent interactions with supervisors, coworkers, and the public, given her mental limitations. [DE 11 at 13.] I fail to see the point. The ALJ specifically went through the functional area of concentrating, persisting or maintaining pace, and supported her conclusion that Claar only had a moderate limitation in this area. [Tr. 31.] The ALJ noted that Claar reported she had limitations with concentration and completing tasks—for example, she claimed she was not able to pay attention for long and could not finish what she started. *Id.* But the ALJ noted that she was able to drive, prepare simple meals, and handle money. *Id.* (citing Tr. 273-74.) The ALJ also acknowledged the record showed that Claar reported attention issues and a poor attention span. *Id.* She therefore concluded that "[t]his evidence, as well as her ability to work, supports a reasonable inference that the claimant has no more than a moderate limitation in the ability to focus attention on work activities and stay on task at a sustained rate." *Id.*

12

There is sufficient detail for me to follow the ALJ's thought process. A "moderate" limitation in concentration, persistence, or pace means the individual is functioning "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R., Part 404, Sub. P., App. 1, § 12.00(F)(2)(c). Examples of activities that fall into the category of concentration, persistence, or pace include "initiating and performing a task that you understand and know how to do," "working at an appropriate and consistent pace," "completing tasks in a timely manner," "ignoring or avoiding distractions while working," "changing activities or work setting without being disruptive," "working close to or with others without interrupting or distracting them," "sustaining an ordinary routine and regular attendance at work," and "working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R., Part 404, Sub. P, App. 1, § 12.00(E)(3). The ALJ's assessment of plaintiff's limitation in this domain is supported by substantial evidence, which she cited to in the record. [Tr. 31.]

Similarly, the ALJ's assessment of the domain of interacting with others is also supported by the record. That domain refers to the abilities to relate to and work with supervisors, co-workers, and the public. 20 C.F.R. Part 404, Sub. P, App. 1, § 12.00(E)(2). Examples include "cooperating with others," "asking for help when needed," "handling conflicts with others," and "responding to requests, suggestions, criticism, correction, and challenges." *Id.* The ALJ acknowledged that Claar reported she had difficulty getting along with others, but also considered Claar's ability to shop in stores, spend

13

time with her children, her ability to get along with authority figures, but noted she had been fired or laid off from a job due to an inability to get along with others. [Tr. 31.] The ALJ noted that overall, the record shows "the claimant was described as cooperative, but on edge." *Id.* Thus, the ALJ rationally concluded, by citing to evidence in the record, that "[t]he residual social functioning reflected in this evidence, as well as her ability to work as a server, supports a reasonable inference that the claimant has no more than a moderate limitation in the ability to relate to and work with others." *Id.* Yes there was some conflicting evidence in the record regarding Claar's social interaction limitations, but "it was therefore within the ALJ's discretion to find that [claimant] was no more than moderately limited in interacting with others." *Megan S. v. Kijakazi*, No. 20 C 1592, 2021 WL 4146913, at *4 (N.D. Ill. Sept. 13, 2021) (citing *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *4 (7th Cir. 2021) ("Weighing conflicting evidence is exactly what the ALJ was required to do in assessing [claimant's] disability claim.")).

Claar claims the ALJ did not address the "quality" of Plaintiff's social interactions. [DE 11 at 14.] But this isn't an accurate criticism. The ALJ addressed the information that was presented in the hearing and detailed in the record, acknowledging the limitations, citing to other evidence showing she was higher functioning, and ultimately reaching a conclusion. This is the exact job of an ALJ.

She also argues that she had task completion difficulties which would bear directly on her ability to persist through an 8-hour workday and would be required for

14

competitive employment. [DE 11 at 20.]  Claar contends the ALJ did not address the amount of time she would be off task or absent from work, but this argument is only supported by her subjective statements.  [*Id.* at 22.] The ALJ acknowledged that during the hearing Claar stated her symptoms would be more severe if she worked more hours. [Tr. 33.]  However, the ALJ thoroughly supported her conclusion that "the claimant does have mental impairments that have affected her ability to perform non-exertional activities" however, her "alleged inability to work was not supported by the objective record," including her limited and conservative treatment.  [Tr. 37.] "[A]n ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility." *Diana S. v. Kijakazi*, No. 19-cv-6344, 2022 WL 2316201, at *10 (N.D. Ill. June 28, 2022) (quoting *Annette v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *12 (N.D. Ill. May 14, 2021)).

The burden was on Claar to provide evidence that she would be off task or absent to a degree she could not hold employment.  However, Claar did not cite to any evidence at all in the medical record showing she would be off task.  *See Bubb v. Kijakazi*, No. 20-cv-101-wmc, 2021 WL 6049072, at *5 (W.D. Wis. Dec. 21, 2021) ("Unlike under step 5 where the burden shifts to the Commissioner . . . absent *some* showing that the evidence of record supports more off-task time, plaintiff has not shown that the ALJ erred.") (emphasis in original); *see also Louis N. v. Kijakazi*, No. 1:22-cv-33, 2022 WL 15738960, at *6 (N.D. Ind. Oct. 28, 2022) ("an ALJ need only provide minimal articulation as to how the evidence supports the limitation she assesses . . . [N]o medical

15

source specifically opined that [the] [p]laintiff . . . required time off task. Thus there is no error in the ALJ's articulation as to these limitations.").

## III. Whether the ALJ's Assessment of Claar's Subjective Symptoms was Wrong

Claar's final main argument is that the ALJ's subjective symptom analysis was patently wrong because the ALJ relied on the purported absence of objective findings and improper conclusions to find Claar less limited than alleged. [DE 11 at 22.] In particular, she alleges "the ALJ does not engage in an analysis of Plaintiff's activities sufficient to support the RFC." [*Id.* at 24.] But the ALJ did review her subjective allegations in detail. The ALJ noted and considered her allegations of "difficulty talking, completing tasks, concentrating, with her memory, understanding, following instructions, and getting along with others." [Tr. 32-33.] She also considered Claar's statements that she had anxiety and brain fog. [Tr. 33.] However, the ALJ also examined Claar's:

> [A]ctivities of daily living; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the claimant's symptoms; the type, dosage, effectiveness, and side effects of medications; the claimant's treatment other than medication; any measures other than treatment related to relieve the symptoms; and any other factors regarding the claimant's functional limitations and restrictions.

[Tr. 34.]

The ALJ also recited in her opinion a detailed summary of the hearing testimony and medical evidence [Tr. 29-30, 32-36], and all of this together shows the ALJ properly considered Claar's subjective symptoms in deciding the proper RFC. *See Stanfill v.*

*Berryhill*, No. 3:17-cv-856-PPS, 2019 WL 1198952, at *4 (N.D. Ind. Mar. 13, 2019) (noting the claimant "does not point out any uncontroverted evidence at odds with the ALJ's decision . . . [i]nstead [claimant] wants me to second-guess the ALJ and re-weigh the evidence in a manner that would result in a more limited RFC determination. But that is not something a reviewing court is permitted to do"). The same goes for Claar's argument that the ALJ didn't consider the combination of Claar's impairments. [DE 11 at 11.] *See Patricia T. v. Saul*, No. 19-cv-614, 2020 WL 2767580, at *6 (N.D. Ill. May 28, 2020) (an argument that an ALJ failed to consider a claimant's combinations of impairments must be more than asking the Court to reweigh the evidence); *Gina V. v. Kijakazi*, No. 20-cv-4009, 2022 WL 1457801, at *3 (N.D. Ill. May 9, 2022) (finding "the combination of impairments" argument unavailing where ALJ offered clear analysis and claimant cannot explain what is not accounted for within RFC).

In this case, Claar's arguments boil down to a request that I reweigh the evidence. *See Anthony G. v. Saul*, No. 17-cv-4393, 2020 WL 439964, at *8 (N.D. Ill. Jan. 28, 2020) ("Claimant's argument can, in fact, be distilled to the following: he believes the ALJ should have weighed the evidence differently than he did. Yet this fundamentally misunderstands the Court's role here, which is not to reweigh the evidence or substitute its judgment for the ALJ's . . . ."). Because the ALJ substantially supported her decision with citations to the hearing and the medical evidence, and included detailed analysis of how she logically and appropriately reached her conclusions, I will not second guess her conclusions.

## Conclusion

For the reasons set forth above, the final decision of the Commissioner of Social Security denying Plaintiff Lori Claar's application for disability and supplemental security income benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: August 14, 2025.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**